**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-30508

_____

MARY CAROLE HALICKI,

Plaintiff-Appellant,

VERSUS

LOUISIANA CASINO CRUISES, INC;
ARTHUR FRANK,

Defendants,

LOUISIANA CASINO CRUISES, INC.,
d/b/a Casino Rouge Carnival Corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
_____

September 1, 1998

Before JOLLY, SMITH, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Mary Halicki appeals adverse rulings in her lawsuit for employment discrimination. We affirm.

I.

Halicki worked for defendant Louisiana Casino Cruises, Inc.,

doing business as Casino Rouge, and was terminated. She sued under title VII, claiming that her termination was the result of sex discrimination.

The district court granted Casino Rouge's motion for summary judgment, and entered final judgment on March 5, 1997. Under FED. R. APP. P. 4(a)(1), Halicki had thirty days therefrom in which to file notice of appeal.[1] She counted on filing a timely motion under FED. R. CIV. P. 59(e), however, which would have the effect of suspending the thirty-day period. *See* FED. R. APP. P. 4(a)(4)(C).

Halicki's counsel claims that because he received notice of the final judgment by mail, he thought the three-day mail service provisions of FED. R. CIV. P. 6(e) applied to enlarge the ten days he otherwise would have from the entry of final judgment to file a rule 59(e) motion. Apparently unaware that the plain language of the rules, well-settled hornbook law, and every other circuit to address the issue had rejected the applicability of rule 6(e) to rule 59(e), the attorney waited until the tenth day *to mail* the rule 59(e) motion, causing it to arrive at the district court two days late.

Casino Rouge, in its opposition to the rule 59(e) motion, objected to its untimeliness. Halicki moved for enlargement of time for filing a notice of appeal under FED. R. APP. P. 4(a)(5)

---

[1] "A timely notice of appeal is necessary to the exercise of appellate jurisdiction." *United States v. Cooper*, 135 F.3d 960, 961 (5th Cir. 1998) (citing *United States v. Robinson*, 361 U.S. 220, 224 (1960)).

2

because of "excusable neglect" in misconstruing rule 6(e); for, if her rule 59(e) motion was untimely, the thirty-day notice of appeal clock did not toll, and her time to appeal had expired. *See Gribble v. Harris*, 625 F.2d 1173, 1174 (5th Cir. Unit A 1980) (per curiam); FED. R. APP. P. 4(a)(4). Halicki also argued that even if the rule 59(e) motion was untimely, the court should construe it as a FED. R. CIV. P. 60(b) motion for relief from judgment. The district court denied, and Halicki timely appealed, the denial of her rule 59(e), rule 4(a)(5), and rule 60(b) motions.

## II.

Rule 6(e), FED. R. CIV. P., provides: "Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period *after the service of a notice* or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period." (Emphasis added.) "Mere quotation of Rule 6(e) shows why it is inapplicable to Rule 59(e) motions. The period for filing a Rule 59(e) motion does notSSin the words of Rule 6(e)SSbegin with 'service of a notice.'" *Derrington-Bey v. District of Columbia Dep't of Corrections*, 39 F.3d 1224, 1225 (D.C. Cir. 1994).[2] Rather, rule

_____

[2] All other circuits to have addressed this issue have found that rule 6(e) does not apply to rule 59(e) motions. *See Parker v. Board of Pub. Utils.*, 77 F.3d 1289, 1291 (10th Cir. 1996) (holding the same); *Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 870 (3d Cir. 1994) (same); *Flint v. Howard*, 464 F.2d 1084, 1087 (1st Cir. 1972) (per curiam) (on petition (continued...)

3

59(e) provides that "[a] motion to alter or amend the judgment shall be served not later than 10 days *after entry of the judgment*." (Emphasis added.)

"Rule 6(e) does not apply to time periods that begin with the filing in court of a judgment or an order. Thus, Rule 6(e) does not apply to the 10-day period that runs from entry of judgment for moving to alter or amend judgment pursuant to Rule 59(e)." 1 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 6.05[3], at 6-35 (3d ed. 1998) (citations omitted). Under the plain language of the rules, therefore, the district court correctly found that Halicki's rule 59(e) motion was untimely filed two days after the tenth day from entry of judgment.

### III.

Halicki argues that even if she misapplied rule 6(e), her construction of the rules in this instanceSSan issue of first impression in this circuitSSshould constitute "excusable neglect" under rule 4(a)(5). Thus, she argues, the district court should have granted her an extension to file a notice of appeal on the underlying summary judgment.

Rule 4(a)(5) provides: "The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a

---

[2](...continued)
for rehearing); *cf. Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1113-14 (11th Cir. 1993) (rejecting the application of rule 6(e) to a motion filed under rule 59(b)).

4

notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a)." Accordingly, we face three issues: (1) what the correct standard is for the evaluation of "excusable neglect"; (2) whether the court employed the correct standard in evaluating "excusable neglect"; and (3) whether, if the court used the correct standard, it reached a tenable result.

In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395-97 (1993), the Court interpreted "excusable neglect" in the context of the bankruptcy rules. It stated:

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account all of the relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 395.

We have adopted the *Pioneer* standard of "excusable neglect" for purposes of FED. R. APP. P. 4(b), which governs *criminal* matters. *See United States v. Clark*, 51 F.3d 42, 43-44 (5th Cir. 1995). Like rule 4(a)(5), rule 4(b) provides that "[u]pon a showing of excusable neglect, the district court may . . . extend the time for filing a notice of appeal for a period not to exceed

30 days from the expiration of the time otherwise prescribed by this subdivision."

In *Clark*, defense counsel, not unlike Halicki's attorney, misconstrued the federal criminal rules and their applicability to the amount of time the defendant had to file his notice of appeal. *See Clark*, 51 F.3d at 42-43. The district court found that our caselaw interpreting FED. R. APP. P. 4 prohibited such conduct from ever constituting "excusable neglect." *See id.* at 43. On appeal, we disagreed, holding that the intervening decision in *Pioneer* abrogated our previous caselaw stringently construing "excusable neglect" in rule 4(b). We noted that under the new, more liberal *Pioneer* standard, the district court *could*SSin its discretionSSfind that Clark's attorney's misreading of the rule constituted "excusable neglect." *See id.* at 44.

We specifically declined, however, to order the district court, on remand, to find that counsel's conduct *must* constitute "excusable neglect." *See id.* ("[W]e do not hold that it would be an abuse of discretion for the district court, on remand, to find no excusable neglect on these facts."). Indeed, we noted, from *Pioneer*, that a misconstruction of the rulesSSespecially when their language is plainSSwill rarely satisfy the "excusable neglect" standard. *See Pioneer*, 507 U.S. at 392 ("[I]gnorance of the rules [and] mistakes construing the rules do not usually constitute 'excusable' neglect."); *see also Clark*, 51 F.3d at 44 (noting the

6

same in the context of that case).

We first must determine whether the reasoning in *Clark* applies, as well, to rule 4(a)(5)SSthat is, to *civil* cases. Although we could make distinctions between the civil and criminal spheres, the argument for applying the *Pioneer* interpretation to the civil context is fairly conclusive.

First, both rule 4(a)(5) and rule 4(b) use "excusable neglect" as the standard for an extension of the time for filing a notice of appeal. We are mindful of the "basic canon of statutory construction that identical terms within an Act bear the same meaning." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992) (citations omitted).

Second, the *Pioneer* Court's construction of "excusable neglect" was apparently generally applicable, as the Court claimed to be adopting "the commonly accepted meaning of the phrase." *Pioneer*, 507 U.S. at 391. For this reason, courts of appeals have readily found the standard applicable to rule 4(a)(5), *see, e.g., Thompson v. E.I. DuPont de Nemours & Co.,* 76 F.3d 530, 533 (4th Cir. 1996), as well as to rule 4(b), *see Clark*, 51 F.3d at 43-44.

Finally, *Pioneer* was a civil bankruptcy proceeding, in which the Court noted that the circuits "similarly have divided" over the term of "excusable neglect" in the context of rule 4(a)(5). *See Pioneer*, 507 U.S. at 387 n.3. We therefore read the Court's

7

opinion, by its own terms, to cover this issue.[3]

Proceeding under the *Pioneer* standard, we face the harder question of how the district court made its "excusable neglect" inquiry. That is, we must decide whether it used the *Pioneer* standard, or instead employed the older, more stringent metric in making its "excusable neglect" determination. If we conclude that the court used the *Pioneer* standard, we must then decide whether it did so correctly.

Halicki does not appear to have proffered any standard of "excusable neglect" to the district court. Instead, she argued there, as here, that *Pioneer* and *Clark* hold that misconstruction of procedural rules *necessarily* should result in a finding of "excusable neglect" where no prejudice results to the opposing party. The court correctly disagreed with this proposition, *see Pioneer*, 507 U.S. at 392, and without discussing its reasoning further, denied the motion for extension of time to file notice of appeal.

---

[3] In extending *Pioneer* to rule 4(a)(5), we follow each of our sister circuits to have addressed the issue. *See Advanced Estimating Sys., Inc. v. Riney*, 77 F.3d 1322, 1323 (11th Cir. 1996) (per curiam); *Thompson*, 76 F.3d at 533 ("While in *Pioneer* the Court interpreted the phrase 'excusable neglect' as used in a rule of bankruptcy procedure, it is evident that the Court intended its definition of 'excusable neglect' to be equally applicable to Federal Rule of Appellate Procedure 4(a)(5), as every appellate court to consider the applicability of *Pioneer* to Rule 4(a)(5) and Rule 4(b) (criminal appeals) has concluded."); *Fink v. Union Cent. Life Ins. Co.*, 65 F.3d 722, 724 (8th Cir. 1995); *Reynolds v. Wagner*, 55 F.3d 1426, 1429 (9th Cir. 1995); *Virella-Nieves v. Briggs & Stratton Corp.*, 53 F.3d 451, 454 n.3 (1st Cir. 1995); *City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994); *Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir. 1994).

It appears, however, that the court considered all evidence Halicki proffered in support of her claim and made an equitable determination that an extension was unwarranted.  Under *Pioneer* and *Clark*, no more is required.[4]

Turning to the district court's application of the *Pioneer* standard to the facts of this case, we detect no error.  The nature of Halicki's mistake weighs heavily against a finding of excusable neglect.[5]

Although in *Clark* we left open the possibility that some misinterpretations of the federal rules may qualify as excusable neglect, such is the rare case indeed.  Where, as here, the rule at issue is unambiguous, a district court's determination that the neglect was inexcusable is virtually unassailable.  Were it otherwise, "almost every appellant's lawyer would plead his own inability to understand the law when he fails to comply with a deadline."  *Riney*, 130 F.3d at 998.  Accordingly, we cannot say that the court abused its discretion in denying Halicki's motion to

---

[4] Halicki argues that granting an extension would cause no prejudice to Casino Rouge.  Given this showing alone, however, the district court was justified in finding that counsel's misconstruction of the rules was not "excusable" neglect:  "The word 'excusable' would be read out of the rule if inexcusable neglect were transmuted into excusable neglect by a mere absence of harm."  *Prizevoits v. Indiana Bell Tel. Co.*, 76 F.3d 132, 134 (7th Cir. 1996).

[5] *See Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 998 (11th Cir. 1997) (mistaken interpretation or ignorance of FED. R. APP. P. 4(a)(4)(F)); *Prizevoits v. Indiana Bell Tel. Co.*, 76 F.3d 132, 134 (7th Cir. 1996) (mistaken interpretation or ignorance of FED. R. CIV. P. 6(b)); *Kyle v. Campbell Soup Co.*, 28 F.3d 928, 931-32 (9th Cir.) (mistaken interpretation of FED. R. CIV. P. 6(e)), *cert. denied*, 513 U.S. 867 (1994); *Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir. 1994) (mistaken interpretation of FED. R. APP. P. 4(a)(4)).

extend the notice of appeal clock under rule 4(a)(5).

### IV.

The only issue before us, therefore, is whether the district court properly disposed of Halicki's motion under rule 60(b) for relief from judgment because of her newly "discovered" (or proffered) evidence and because of the district court's alleged mistake of law at summary judgment. "A 'timely' appeal from a 'ruling on a Rule 60(b) motion' may be taken under FED. R. APP. P. 4(a)(5), although the court of appeals 'may review the ruling only for abuse of discretion' and although the appeal 'does not bring up the underlying judgment for review.'" *Derrington-Bey*, 39 F.3d at 1226 (quoting *Browder v. Director, Dep't of Corrections*, 434 U.S. 257, 263 n.7 (1978)).

"[T]he decision to grant or deny relief under Rule 60(b) lies within the sound discretion of the district court and will be reversed only for abuse of that discretion." *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc). "Furthermore, we have repeatedly held that in order to prevail on a motion under FED. R. CIV. P. 60(b)(2) based upon newly presented evidence, the movant must demonstrate among other things that it exercised due diligence in obtaining the information." *Williams v. Chater*, 87 F.3d 702, 705 n.2 (5th Cir. 1996) (citing *Government Fin. Servs. One Ltd. Partnership v. Peyton Place, Inc.*, 62 F.3d 767, 771 (5th

10

Cir. 1995); *New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1199 (5th Cir. 1993)).

Casino Rouge initially opposed Halicki's rule 60(b) motion because it was originally filed as an untimely rule 59(e) motion. Casino Rouge argues that Halicki was required to file a separate rule 60(b) motion for the lower court to consider it as such; that is, Casino Rouge argues that Halicki could not use her untimely rule 59(e) motion as a motion under rule 60(b).

Casino Rouge's argument in this regard cuts against the grain of the liberal Federal Rules of Civil Procedure. "As with untimely Rule 52(b) motions, and untimely Rule 59(a) motions, a court may treat an untimely Rule 59(e) motion to alter or amend the judgment as if it were a Rule 60(b) motion if the grounds asserted in support the Rule 59(e) motion would also support Rule 60(b) relief." 12 MOORE ET AL., *supra*, § 60.03[4], at 60-24.[6] Here, the grounds Halicki asserted in her rule 59(e) motionSSnew evidence and mistakeSSwould also support a rule 60(b) motion.

Halicki contends that having properly considered the rule 60(b) motion, the district court was required to pay special solicitude to her claim because she never had an "examination of the full merits of the cause," which, in her view, means a trial. Indeed, "where denial of relief [under rule 60(b)] precludes

---

[6] *See Damiano v. FDIC*, 104 F.3d 328, 332 n.4 (11th Cir. 1997) (noting the same); *Edwards*, 78 F.3d at 995 (same); *Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1166-67 (7th Cir. 1995) (same).

11

examination of the full merits of the cause, even a slight abuse of discretion may justify reversal." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. Unit A Jan. 1981) (citation omitted).

Our caselaw allows for more leniency in opening up *default* judgments, not those in which the court has had a chance to evaluate the merits. *See, e.g.*, *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1459 (5th Cir. 1991); *see also* 12 MOORE ET AL., *supra*, § 60.22[3][a], at 60-69 to 60-70. "Summary judgment is a judgment on the merits; it has the same effect as if the case had been tried by the party against whom judgment is rendered and decided against him." *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1348 (5th Cir. 1985). Accordingly, we reject Halicki's invitation to conduct a more searching review and instead give our usual deference to the district court's denial of rule 60(b) relief. *See Crutcher v. Aetna Life Ins. Co.*, 746 F.2d 1076, 1082 (5th Cir. 1984) (reviewing a denial of a rule 60(b) motion for abuse of discretion).

To the extent that the "newly discovered" evidence is grounds for Halicki's rule 60(b) motion, Halicki has made no showing that the evidence in the newly proffered affidavits was "newly discovered," in that it was not obtainable prior to summary judgment had she exercised "due diligence." Indeed, all but one of the supplemental affidavits proffered with the rule 60(b) motion were from the *same* witnesses who had offered affidavits before

12

summary judgment.  The refusal to grant rule 60(b) relief on this paltry showing of "newly discovered" evidence was certainly not an abuse of the court's equitable powers to reopen the judgment.

Halicki's second theory for rule 60(b) relief§§that the district court applied the wrong legal standard at summary judgment§§is not one that readily fits within one of the enumerated grounds for relief outlined in the rule.  Although it arguably could fall within the scope of rule 60(b)(1), mistake,[7] or rule 60(b)(6), the "catch-all" provision, it should not, in this case, because the ground§§the district court's error of law§§appears to be no more than a mask for Halicki's forfeited appeal of the court's summary judgment ruling.[8]

"Rule 60(b) is not a substitute for a timely appeal.  Courts should not grant relief when the moving party has not been diligent in protecting its own rights by filing an appeal from an adverse judgment."  12 MOORE ET AL., *supra*, § 60.22[2], at 60-67.[9]  Even assuming *arguendo* that the district court made an error of law at

---

[7] A rule 60(b) challenge on this ground is usually thought to encompass "an obvious error of law."  *Hill v. McDermott, Inc.*, 827 F.2d 1040, 1043 (5th Cir. 1987).  The alleged error in this case is not such a mistake.

[8] *See, e.g., Travelers Indem. Co. v. United States*, 728 F.2d 699, 703 (5th Cir. 1984) ("Although Travelers uses the war-weary rhetorical epithet of 'manifest' or 'beyond question' in depicting the claimed error, the briefs demonstrate at best only that the question is arguable.").

[9] *See Pryor v. United States Postal Serv.*, 769 F.2d 281, 288-89 (5th Cir. 1985) (noting that "[w]ere this Court to make an exception to finality of judgment each time a hardship was visited upon the unfortunate client of a negligent or inadvertent attorney, even though the result be disproportionate to the deficiency, courts would be unable to ever adequately redraw that line again, and meaningful finality of judgment would largely disappear").

summary judgment, it had the discretion to deny Halicki's rule 60(b) motion to prevent her end-run of the normal appellate process for correcting legal error.

AFFIRMED.